UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CLAY MASSI,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No. 3:05-CV-425
                                     )        (Guyton)
WALGREEN CO.,                        )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment.  [Doc. 11].  Presently before the Court are the following pretrial

motions filed by the parties: Plaintiff's Motion to Compel Production of Documents in Response

to Plaintiff's First Request to Produce [Doc. 22]; Defendant's Motion to Quash Subpoena Duces

Tecum [Doc. 27]; Plaintiff's Motion to Exclude and for Sanction and Disqualification for Ex Parte

Communication with Plaintiff's Treating Physician [Doc. 28]; and Plaintiff's Motion for Leave to

Amend Brief in Support of Motion to Compel [Doc. 30].

In this case, the plaintiff Clay Massi alleges that a Walgreen's pharmacist wrongfully

filled his prescription for Ritalin with a more potent drug, Adderall.  According to the Complaint

[Doc. 3], a Walgreen pharmacist subsequently contacted the plaintiff and advised him of the

mistake.  The plaintiff then contacted his physician, Dr. Cook, for an emergency appointment.  Dr.

Cook contacted Walgreen to seek testing and treatment for the plaintiff and was told to contact

Walgreen's claims management company, Sedgwick Claims Management Services, Inc. ("Sedgwick") for authorization of payment for the testing and treatment. The plaintiff claims that Sedgwick, however, refused to authorize or provide the costs of plaintiff's evaluation and treatment.

The plaintiff alleges that he suffered numerous injuries as a result of Walgreen's negligent administration of his prescription, including experiencing a stroke. The plaintiff further alleges that both Walgreen and Sedgwick, as an agent of Walgreen, had a duty to render aid to the plaintiff by providing medical care, testing, and treatment, and that Walgreen's refusal to render aid to the plaintiff constitutes outrageous conduct. The plaintiff seeks an award of compensatory and punitive damages for his injuries. [Doc. 3].

I.    **Plaintiff's Motion to Compel**

The plaintiff moves the Court for an Order compelling the defendant to provide supplemental responses to plaintiff's Request for Production of Documents, which was served on June 1, 2006. [Doc. 22]. Specifically, the plaintiff challenges the defendant's assertion of various objections and privileges. The defendant opposes the plaintiff's motion, arguing that its responses to the plaintiff's discovery requests were adequate. [Docs. 25, 26]. The Court will address each of the plaintiff's objections to the defendant's discovery requests in turn.[1]

A.    **Work Product**

The plaintiff first objects to the defendant's assertion of work product protection to the requests for Sedgwick files regarding the claim and denial of medical care to the plaintiff.

---

[1] The plaintiff subsequently moved to amend his brief in support of the motion to compel. [Doc. 30]. For good cause shown, Plaintiff's Motion for Leave to Amend Brief in Support of Motion to Compel [Doc. 30] is **GRANTED**. The Court's discussion of the plaintiff's motion to compel will therefore reference the plaintiff's brief as amended by this motion.

Specifically, the plaintiff objects to the assertion of work product protection with respect to six claim log entries, dated December 14, 2004 to February 23, 2005, identified in the defendant's privilege log. According to the defendant's privilege log, the December 14, 2004 Sedgwick claim log entry discusses "opening claim file[,] setting initial reserves and information that will be needed to assess claim and conversations with employees with Walgreens regarding the incident." The next claim log entry, which was made on December 17, 2004, is in reference to Sedgwick's investigation and information gathered regarding the plaintiff's claim. The next three claim log entries from January, 2005 relate to conversations between Sedgwick employees and Walgreen's pharmacist Davonna Foley, as well as to the change in reserves on the claim. The final claim log entry at issue, dated February 23, 2005, references a phone call between Sedgwick and pharmacist Davonna Foley [Doc. 30 Ex. B: Defendant's Privilege Log at 3].

The plaintiff argues that these files entries are relevant to the issues of liability in this case and further, because these files were made by a claims adjuster prior to the institution of litigation, they are not protected by the work product privilege. The plaintiff further argues that even if these files constitute work product, the plaintiff has a manifest need for these documents and that the information cannot be obtained by any less burdensome means.

The defendant argues that these claim files constitute work product because they were prepared in anticipation of litigation. In support of its argument, the defendant relies upon the affidavit of Christina Brann. In her affidavit, Brann states as follows:

> 2. Sedgwick CMS is the third party administrator of claims made against Walgreen Co. Sedgwick CMS has been retained by Walgreen Co. to investigate claims that are made by customers of Walgreen Co. or claims made by employees of Walgreen Co. for workers' compensation benefits. Sedgwick CMS is responsible for investigating, adjusting claims and monitoring claims that result in

suit. Sedgwick CMS does not initiate an investigation until Sedgwick CMS is notified that an incident could result in a claim against Walgreen Co. . . . **Sedgwick CMS provides services to Walgreen Co. only after an incident has occurred that could result in a claim or litigation against Walgreen Co.** . . .

3. I am the claims representative of Sedgwick CMS who was assigned to the claim of Clay Massi which is the subject of the above-styled suit. It was my duty to investigate and determine whether the claim would be attempted to be settled, and after suit was filed, it is my duty to monitor the present suit of Clay Massi against Walgreen Co. All of the records that I have made were made only after Sedgwick CMS received a telephone call from Davonna Foley, a pharmacist in the employ of Walgreen Co. in Knoxville, Tennessee. Ms. Foley called Sedgwick CMS on December 13, 2004 and reported that a patient, Clay Massi, had apparently received the wrong medication and reported that Mr. Massi claimed to have had adverse consequences from ingesting the incorrect medication. **Based upon this initial report of a claim against Walgreen Co., I began an investigation to determine the facts of the claim, to decide how or if the claim should be adjusted or settled, and since suit has been filed, to monitor all development with the suit. All of my actions were done in anticipation of litigation.**

[Doc. 26 Ex. A: Affidavit of Christina Brann] (emphasis added). The defendant further argues that the plaintiff has not attempted to make a showing of substantial need for the materials or that the plaintiff is unable to obtain the information by other means.

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable to without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such

materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

As the Supreme Court explained in Hickman v. Taylor, the point of the work product doctrine is that "discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." 329 U.S. 495, 516, 67 S. Ct. 385, 396, 91 L. Ed. 451 (1947) (Jackson, J. concurring)

When a claim of work product is made, the party seeking discovery must first demonstrate that the material sought is relevant to the subject matter and not privileged pursuant to Rule 26(b)(1). Toledo Edison Co. v. G A Technologies, Inc., 847 F.2d 335, 339 (6th Cir. 1988). If the court determines that the material sought is relevant and not privileged, the burden shifts to the objecting party to demonstrate that the material was "prepared in anticipation of litigation or for trial" by or for that party or that party's representative. Id. If the court finds that the material was prepared in anticipation of litigation or for trial, the burden shifts back to the party requesting the material to demonstrate (1) a "substantial need" for the material for the preparation of the party's case and (2) that the party is unable without "undue hardship" to obtain the substantial equivalent of the material through other means. Id. at 339-40. Even if the requesting party shows substantial need and undue hardship, the court may not permit discovery of the attorney's "mental impressions, conclusions, opinions, or legal theories." Id. at 340. With respect to this latter issue, the objecting party has the burden of demonstrating "that the nature of the materials are mental impressions, conclusions, opinions or legal theories of an attorney or representative." Id.

The defendant does not appear to challenge the relevancy of the requested documents or otherwise claim that these documents are subject to any sort of privilege. Accordingly, the next

step in the Court's analysis is to determine whether the defendant has demonstrated that the documents were prepared "in anticipation of litigation."

The Sixth Circuit recently adopted the "because of" test as the standard for determining whether documents were prepared in anticipation of litigation and thus subject to work product privilege. United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006). The "because of" test adopted by the Court has two components: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." Id. at 594. Documents that were prepared in the ordinary course of business or would have been prepared in substantially the same way regardless of the anticipated litigation are not protected as work product. Id. at 593-94.

Upon review of the pleadings submitted by the parties, the Court concludes that the subject claim log entries were prepared in the ordinary course of business and would have been prepared in substantially the same manner regardless of the anticipated litigation. The District Court for the Eastern District of Michigan recently addressed a similar issue in Michigan First Credit Union v. Cumis Insurance Society, Inc., No. 05-74423, 2006 WL 1851018 (E.D. Mich. July 5, 2006). In that case, the plaintiff sought documents generated by the defendant's claim investigators. The defendant claimed work product privilege, arguing that the plaintiff's claim file was developed in anticipation of litigation. The District Court disagreed:

> To meet that standard, it must be shown that the documents were prepared "because of a real possibility of litigation, not for ordinary business purposes." In re Om Group Securities Litigation, 226 F.R.D. 579, 584 (6th Cir. 2005). A review of the documents that have been submitted *in camera* convinces this Court that even after the initial claim denial in November of 2004, through the time of the

final denial in November of 2005, **this was an open investigation that might well have gone in Plaintiff's favor.** The documents generated during that time were made for ordinary business purposes, that is, to investigate and resolve a claim. While litigation is always a possibility, it was not a *real* possibility, within the meaning of <u>Om Group</u>, until the time of the final denial in November, 2005.

<u>Michigan First Credit Union</u>, 2006 WL 1851018, at *1 (bold emphasis added).

Similarly, in this case, the evidence presented by the defendant indicates that documents generated by Sedgwick were made for ordinary business purposes and not in ancitipation of litigation. According to Christina Brann's affidavit, Sedgwick is the third party administrator of claims against Walgreen. As such, Sedgwick is responsible for investigating and adjusting claims, thereby resolving them. If such claims cannot be resolved and they result in litigation, Sedgwick then is responsible for monitoring those claims throughout the litigation process. Thus, while Brann makes the conclusory statement in her affidavit that the plaintiff's claim file was prepared "in anticipation of litigation," it appears that the plaintiff's claim file was in fact created in the ordinary course of Sedgwick's business, that is, for the purpose of investigating and the possible resolution of his claim, and not because of anticipated litigation. The anticipated litigation was not "a real possibility" until Sedgwick finally denied the plaintiff's claim.

The defendant argues that all of the claim file entries are protected work product because the plaintiff had threatened legal action early on in his discussions with Walgreen. Specifically, the defendant points to the plaintiff's deposition testimony, where the plaintiff testified that Foley had told him on December 13, 2004 that Walgreen's legal department would likely contact him about the incident. Mistakenly believing that Walgreen was attempting to bring some sort of legal action against him, the plaintiff testified that he told Foley that he was contacting "his lawyer." The plaintiff testified, however, that he did not contact a lawyer until a few weeks later.

7

The fact that the plaintiff threatened to contact his lawyer does not render the subject claim file documents privileged. Despite the plaintiff's threats, Walgreen's agent, Sedgwick, still opened a claim file on the plaintiff in order to investigate and attempt to settle his claim without litigation. Thus, in the Court's view, there has been no showing that the claim file would have been kept any differently had litigation been imminent.[2]

Accordingly, Plaintiff's Motion to Compel [Doc. 22] with respect to the request for Sedgwick files regarding the claim and denial of medical care to the plaintiff is **GRANTED** to the extent that the defendant shall be required to produce the withheld claim log entries up to the point where Sedgwick made a final denial of the plaintiff's claim.

**B.     Peer Review Privilege**

Next, the plaintiff challenges the defendant's assertion of peer review privilege with respect to requests for production numbers 5 and 18. Request number 5 seeks the production of "all documents, which were kept during the ordinary course of business, which were given to or reviewed in any way by any 'peer review board,' 'pharmacy review board,' or any similar entity, with regards to the misfilled prescription described in the Complaint." Request number 18 seeks the production of the PQAR form produced as a result of the incident described in the Complaint.

The defendant asserts two bases for the peer review privilege. First, it argues that the requested documents are protected by the Patient Safety and Quality Improvement Act of 2005, 119 Stat. 424, which amends the Public Health Service Act, 42 U.S.C. § 299, *et seq.* Second,

---

[2]The plaintiff conceded at the motion hearing that he is not entitled to any documents created or maintained by Sedgwick in the claim file after litigation commenced in this action.

Walgreen relies upon the Tennessee peer review statute for pharmacists, codified at Tenn. Code Ann. § 63-10-405.

The Patient Safety and Quality Improvement Act provides that certain "patient safety work product" is privileged and not subject to discovery in a civil proceeding. 42 U.S.C. § 299b-22(a), 119 Stat. 424. The Act defines "patient safety work product" as

> any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements –
>
> (i) which –
> (I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or
> (II) are developed by a patient safety organization for the conduct of patient safety activities;
> and which could result in improved patient safety, health care quality, or health care outcomes; or
> (ii) which identify or constitute the deliberations or analysis of, or identify the fact or reporting pursuant to, a patient safety evaluation system.

42 U.S.C. § 299b-21(7)(A). The Act goes on to clarify that "patient safety work product" does not include (1) a patient's own medical records or (2) information that is collected, maintained or developed separately from a patient evaluation system. 42 U.S.C. § 299b-21(7)(B).

The Court does not find the Patient Safety and Quality Improvement Act to be applicable in this case because there has not been an adequate showing made that the information sought was assembled or developed for the purpose of reporting the same to a "patient safety organization," as that term is defined by the statute. Accordingly, the Court does not find the requested documents to be privileged on this basis.

The applicable Tennessee peer review statute, Tenn. Code Ann. § 63-10-405 provides, in pertinent part, as follows:

> All information, interviews, reports, statements, memoranda or other
> data furnished to any peer review committee, association board,
> organization board or other entity and any findings, conclusions or
> recommendations resulting from the proceedings of such committee,
> board or entity are privileged . . . .  Nothing contained in this
> subsection applies to records, documents or information otherwise
> available from original sources and such records, documents or
> information are not to be construed as immune from discovery or use
> in any civil proceedings solely due to presentation to the committee.

Tenn. Code Ann. § 63-10-405.

Plaintiff's request number 5 seeks information that was furnished to any peer review committee or similar entity.  Based upon the applicable Tennessee peer review statute, the Court finds that plaintiff's request, as worded, seeks documents that are privileged and should therefore not be produced.

With respect to request number 18, however, the Court finds that the requested PQAR document is not protected by the peer review privilege.  In his affidavit, District Pharmacy Supervisor Scott Leslie states that the PQAR form is filled out under the Continuous Quality Improvement Program, a program which tracks prescription errors.  Leslie states that the report is completed for peer review purposes and is used to discuss the proper procedures for filling prescriptions and to learn what they can do to continue to improve Walgreen's operation.  Walgreen's operation manual, however, indicates that the PQAR forms are used for more than just peer review.  The manual states that a PQAR form should be completed after any prescription event; that a copy of the form is to be filed with the "Pharmacy Record Keeping storage boxes"; and that copies of the PQAR should be forwarded to the Insurance and Risk Management Department.  Thus, the PQAR form appears to be kept in the regular course of Walgreen's business and are therefore available from their original source (*i.e.*, the store database) and provided regardless of their use as

a peer review tool. Accordingly, for these reasons, Plaintiff's Motion to Compel [Doc. 22] is **GRANTED** to the extent that the Court finds that the PQAR form that resulted from the incident described in the Complaint should be produced to the plaintiff.

C.    **Other Objections**

In request number 7, the plaintiff seeks a copy of the contract between Walgreen and Sedgwick. The defendant objected to this request, arguing that the subject contract is not relevant to any claims or defenses in this litigation. The Court finds that the contract is relevant to the issue of agency and therefore should be produced.

In request number 16, the plaintiff seeks a copy of the complaint filed with the Tennessee Board of Pharmacy. The defendant objected to this request on the grounds that the complaint contained confidential health information covered by the Health Insurance Portability and Accountability Act ("HIPAA"). The plaintiff argues that this information is relevant and cannot be obtained by any other less burdensome means. The Court finds that the complaint should be produced, in redacted form, so as to protect any confidential health information contained therein.

For the foregoing reasons, Plaintiff's Motion to Compel [Doc. 22] is **GRANTED IN PART** and **DENIED IN PART**. Any documents that the defendant has been ordered to produce shall be produced to the plaintiff within fifteen (15) days of the entry of this Order.


II.    <u>**Defendant's Motion to Quash Subpoena**</u>

The defendant moves to quash a subpoena duces tecum issued to Sedgwick, seeking the production of the plaintiff's claim file. Walgreen objects on the grounds that the subpoena duces tecum seeks disclosure of privileged work product material. [Doc. 27]. To the extent that the Court

11

has already determined that the plaintiff's claim file, at least until the point that the plaintiff's claim was denied by Sedgwick, was not prepared "in anticipation of litigation," the defendant's Motion to Quash Subpoena Duces Tecum [Doc. 27] is **DENIED**. The defendant shall not be required to produce that part of the claim file which was created after Sedgwick denied the plaintiff's claim.

### III.     Plaintiff's Motion to Exclude and for Disqualification of Counsel

The plaintiff moves the Court to strike the testimony of defense witness (and plaintiff's former treating physician) Dr. Sam A. Kabbani. The plaintiff also seeks the disqualification of defense counsel, as well as the imposition of sanctions, for defense counsel's ex parte communication with this witness. [Doc. 28]. For grounds, the plaintiff states that defense counsel, James Harrison, had requested the deposition of Dr. Kabbani in August, 2006, and specifically requested permission to speak with Dr. Kabbani directly. Plaintiff's counsel, Philip Lomonaco, denied Harrison's request to speak with Dr. Kabbani directly but did schedule a deposition to occur on August 14, 2006. When Lomonaco arrived at Dr. Kabbani's office for the deposition, Harrison was already there and admitted that he had spoken to Dr. Kabbani. The plaintiff asserts that Dr. Kabbani was subsequently hostile to the plaintiff in the deposition, and that this hostility was the prejudicial effect of Harrison talking to him prior to the deposition. The plaintiff contends that Harrison willfully and knowingly violated Tennessee law and induced Dr. Kabbani to break patient-physician confidentiality. [Doc. 28].

In a letter dated August 18, 2006, Harrison explained to plaintiff's counsel what occurred during his meeting with Dr. Kabbani prior to the deposition:

> As you are aware, I had my banker's box with the file materials and my brief case. Upon arriving, I advised the office staff that I was

there for deposition. I was told that Dr. Kabbani was with someone and it would be a while before he was ready for deposition. Since I had my file box and brief case, I asked if I could put these items where the deposition would be taken. The office personnel said she would show me the way. I was getting my file with the medical records out of the box and my legal pad from my briefcase when Dr. Kabbani walked into his office.

Dr. Kabbani asked if I was the attorney for deposition, and I said I was. I then commented upon the football that Dr. Kabbani had that was signed by Joe Namath. Dr. Kabbani then offered to sell the autographed football to me and I declined and made a joke about declining. Dr. Kabbani then showed me the picture in his office where the photo of Joe Namath and Dr. Kabbani was taken together. Dr. Kabbani told me the story regarding how the photo with Joe Namath happened to be taken.

At this point, I was walking from the office and Dr. Kabbani asked if I represented Mr. Massi. I replied that I represented Walgreens. Dr. Kabbani asked what the case was about. I responded that Mr. Massi claimed in the suit that he had received Adderall when he should have received Ritalin and that Mr. Massi claimed in the suit that he had a stroke as a result of ingesting the wrong medication. I advised that the prescription was in November-December 2004, and that I wanted Dr. Kabbani's opinion whether Mr. Massi had a stroke in view of the two MRI's that were supplied to me when I requested his records.

This was the discussion with Dr. Kabbani and no information was given or sought regarding any symptoms, complaint, or any discussions between Dr. Kabbani and Mr. Massi.

[Doc. 28 Ex. C]. Harrison offered to reconvene Dr. Kabbani's deposition so that Lomonaco could question Dr. Kabbani about the incident, but Lomonaco refused.

Under Tennessee law, there is an implied covenant of confidentiality between plaintiffs and their treating physicians. Givens v. Mullikin, 75 S.W.3d 383, 407 (Tenn. 2002). The implied covenant of confidentiality "forbids doctors from releas[ing] without the patient's permission . . . any confidential information gained through the [physician-patient] relationship."

Alsip v. Johnson City Med. Ctr., 197 S.W.3d 722, 726 (Tenn. 2006) (quoting Givens, 75 S.W.3d at 407). Tennessee courts have held that ex parte communications between a plaintiff's non-party treating physician and defense counsel violate this implied covenant. Id. at 729; Brazier v. Crockett Hosp., No. M2004-02941-COA-R10-CV, 2006 WL 2040408, at *2 (Tenn. Ct. App. July 20, 2006).

In the present case, the Court does not find that a showing has been made that Dr. Kabbani released "any confidential information gained through" his relationship with the plaintiff during his conversation with defense counsel. See Alsip, 197 S.W.3d at 726. The evidence before the Court indicates that this conversation was brief and innocuous and that their discussion regarding Mr. Massi did not go beyond the most general information about the litigation. While the plaintiff is certainly free to reconvene Dr. Kabbani's deposition and inquire about this matter further, the Court cannot say that disqualification of Dr. Kabbani is warranted under the circumstances at this time. Nor does the Court find that defense counsel should be disqualified or otherwise sanctioned for his conduct. The Court finds that defense counsel did not act in bad faith in speaking with Dr. Kabbani under the circumstances. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (finding sanctions pursuant to court's inherent powers appropriate where counsel acted in bad faith).

For these reasons, Plaintiff's Motion to Exclude and for Sanction and Disqualification for Ex Parte Communication with Plaintiff's Treating Physician [Doc. 28] is **DENIED**.


## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents in Response to Plaintiff's First Request to Produce [Doc. 22] is **GRANTED IN PART** and **DENIED IN PART**; Defendant's Motion to Quash Subpoena Duces Tecum [Doc. 27] is **DENIED**;

Plaintiff's Motion to Exclude and for Sanction and Disqualification for Ex Parte Communication with Plaintiff's Treating Physician [Doc. 28] is **DENIED**; Plaintiff's Motion for Leave to Amend Brief in Support of Motion to Compel [Doc. 30] is **GRANTED**.

**IT IS SO ORDERED.**

**ENTER:**

_____s/ H. Bruce Guyton_____
United States Magistrate Judge