UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CLAY MASSI, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:05-CV-425 |
| | ) (Guyton) |
| WALGREEN CO., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 11]. Presently before the Court is the Motion for Summary Judgment [Doc. 33] filed by the defendant Walgreen Co. ("Walgreen"). The Court held a hearing on this motion on November 2, 2006.

**I.    Introduction**

In this action, the plaintiff Clay Massi alleges that a Walgreen's pharmacist wrongfully filled his prescription for Ritalin with a more potent drug, Adderall. According to the Complaint [Doc. 3], a Walgreen pharmacist subsequently contacted the plaintiff and advised him of the mistake. The plaintiff then contacted his physician, Dr. Cook, for an emergency appointment. Dr. Cook contacted Walgreen to seek testing and treatment for the plaintiff and was told to contact Walgreen's claims management company, Sedgwick Claims Management Services, Inc.

("Sedgwick") for authorization of payment for the testing and treatment. The plaintiff claims that Sedgwick, however, refused to authorize or provide the costs of plaintiff's evaluation and treatment.

The plaintiff alleges that he suffered numerous injuries as a result of Walgreen's negligent administration of his prescription, including experiencing a stroke. The plaintiff further alleges that both Walgreen and Sedgwick, as an agent of Walgreen, had a duty to render aid to the plaintiff by providing medical care, testing, and treatment, and that Walgreen's refusal to render aid to the plaintiff caused him to delay receiving such treatment and he thereby suffered additional injuries. The plaintiff further alleges that Walgreen's refusal to render medical aid to the plaintiff constitutes outrageous conduct. The plaintiff seeks an award of compensatory and punitive damages for his injuries. [Doc. 3].

The defendant now moves for partial summary judgment with respect to (1) the plaintiff's claim that the defendant had a duty to pay for medical care for the plaintiff; (2) the plaintiff's claim for punitive damages arising out of the defendant's failure to pay for the plaintiff's medical care; and (3) the plaintiff's claim for outrageous conduct arising out of the defendant's failure to pay for the plaintiff's medical care. [Doc. 33].[1]

After carefully considering the entire record, the Court concludes that summary judgment in favor of Walgreen is proper as to the plaintiff's claims arising from Walgreen's failure to pay for his medical treatment. Accordingly, for the reasons set forth herein, the defendant's Motion for Summary Judgment [Doc. 33] is **GRANTED**.

---

[1] The defendant does not seek summary judgment with respect to the plaintiff's clam for the negligent administration of his prescription.

**II.        Relevant Facts**

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite and consider the relevant facts in the light most favorable to the plaintiff. In doing so, the Court relies on the depositions of the plaintiff Clay Massi and Walgreen's employee Davonna Foley, as well as other testimony and exhibits filed with the Court.

On November 18, 2004, Massi picked up a prescription refill for Ritalin at the Walgreen's pharmacy. [Massi Dep. at 95]. On December 12, 2004, Massi received a phone call from Walgreen's pharmacist Davonna Foley, asking him to describe the contents of his prescription. [Id. at 161]. According to Massi, when he described the pills in his prescription, Foley said, "that's Adderall, we've given you the wrong drug." Massi testified that Foley advised that she would call Massi's physician, Dr. Cook. He further testified that Foley told him that "she would cover all my medical care." Foley instructed Massi to return the prescription to the store. [Id. at 161].

Massi returned to the pharmacy on December 13, 2004 to receive the correct prescription. He testified that at that time, Foley told him that she would have a doctor call him from Walgreen's and that the legal department would be calling him. [Id. at 159]. Massi testified that Foley again told him that his medical care would be taken care of and that he just needed to call her for the claim number.

On December 13, 2004, Massi contacted Dr. Cook's office and spoke with the office manager, Ginger Hasentufel, about the misfilled prescription. Hasentufel called Foley and verified that Massi had been given Adderall instead of Ritalin. Hasentufel further testified that Foley stated

3

that the misfill was "their error" and that "they would pay for any doctor visits due to this." [Hasentufel Aff. ¶¶ 4, 5].

On December 14, 2004, Massi was examined by Dr. Cook. [Massi Dep. at 164]. Dr. Cook was concerned that Massi may have had a cerebrovascular accident secondary to taking Adderall. Dr. Cook determined that Massi needed to go to the hospital for evaluation and treatment. Dr. Cook told Massi to go home and that he would call Foley so Walgreen could pay for the medical treatment. Dr. Cook called Dr. Foley and was given the name and phone number of Christina Brann at Sedgwick to contact regarding medical expenses. Dr. Cook called Brann and discussed the need for certain medical tests and possible treatment for Massi, and Brann said that she would not authorize an evaluation or any medical treatment. [Cook Aff. ¶¶ 2-10].

On December 16, 2004, the plaintiff woke up in the middle of the night and could not move his left arm. He had a massive headache and could not stand up. [Massi Dep. at 96-98]. He also had blurred vision. [Id. at 99].

Later that week, Massi went to the emergency room but left without receiving treatment. Massi testified that he was told that he needed to have a certain test performed, but that the test would cost eight thousand dollars. Massi testified that he had a three thousand dollar deductible and therefore declined the test. [Id. at 124].

**III.**     **The Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

4

of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Id. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52; see also Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997) (requiring non-moving party "to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial" in order to defeat summary judgment).

**IV.     Analysis and Ruling**

    **A.     Duty to Render Aid**

The defendant first argues that under Tennessee law, a tortfeasor generally has no duty to provide medical care to a plaintiff. The plaintiff counters that a duty arose in this case when Walgreen gratuitously promised to pay for the plaintiff's medical care. Alternatively, the plaintiff argues that Walgreen's promise was in the nature of an implied contract to pay for medical treatment. Further, the plaintiff contends that, because of the foreseeable risk of harm to the plaintiff, a duty arose to provide aid in the form of medical testing to determine the severity of the damage caused by the defendant's negligence.

To the extent that the plaintiff claims that Walgreen's alleged promise to pay for his medical treatment could be construed as a contract, the Court finds that any such contract would fail for a lack of consideration. See Price v. Mercury Supply Co., 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984) (holding party attempting to prove existence of contract must show contract is supported by adequate consideration). To the extent that the plaintiff claims that Walgreen's alleged pledge to pay for his medical treatment constituted a gratuitous promise giving rise to a duty, the Court finds that the plaintiff's cause of action must fail as well. In order to enforce a gratuitous promise, the plaintiff must show that there was a promise made "which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance . . . ." Barnes & Robinson Co. v. OneSource Facility Services, Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). In the present case, Walgreen's alleged promise did not result in any action or forbearance on the part of the plaintiff. After Christina Brann of Sedgwick refused to pay for the testing and treatment that Walgreen had allegedly promised to provide, the

6

plaintiff did not pursue medical treatment or testing; however, he would not have sought medical testing or treatment anyway because, as he stated in his deposition, he could not afford it. Thus, even if Walgreen had never made a promise to pay for medical treatment, the result for the plaintiff would have been the same: he would not have procured medical testing and treatment. Absent some showing of reliance upon Walgreen's promise, the plaintiff's claim of a duty arising from the defendant's gratuitous promise must fail.[2]

The Court finds that the plaintiff has failed to establish that a separate cause of action exists for the defendant's failure to provide medical testing and treatment. The plaintiff has not cited to any case in Tennessee which has held that a defendant has a duty to pay for the plaintiff's medical expenses after an alleged tortious act but before the defendant's liability for that harm has been established. This is not to say, however, that the trier of fact may not hold the defendant liable for the injuries sustained by the plaintiff that were incurred as a result of the lack of medical treatment in the days following the discovery of the misfilled prescription. If the plaintiff can establish that the injuries he subsequently suffered were a result of ingesting the wrong medication, then the plaintiff may be entitled to recover for those injuries. These are questions of fact for the jury to determine.

**B.     Outrageous Conduct**

In order to state a claim for outrageous conduct, a plaintiff must show that: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004). It is not

---

[2]The Court further notes that there is no evidence in the record at this time to indicate that the plaintiff suffered additional injuries arising solely because of the delay in medical testing and treatment, a fact which further supports the dismissal of this claim.

enough to show that the defendant acted with tortious or criminal intent; the plaintiff must "show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999)).

In the present case, the Court finds that neither the defendant's refusal to pay for the plaintiff's medical treatment or the defendant's alleged negligent filling of a prescription constitutes conduct so outrageous as not to be tolerated by a civilized society. Accordingly, the plaintiff's claim for outrageous conduct must be dismissed.

### C. Punitive Damages

Because the Court finds that the plaintiff has not stated a claim arising out of the defendant's refusal to pay for the plaintiff's medical treatment, the plaintiff's claim for punitive damages based on this conduct must fail as well.

## V. Conclusion

In the present case, there is no question that the plaintiff has stated a cause of action for negligence arising out of the alleged misfill of his prescription. That the defendant has a duty to use reasonable care when filling prescriptions is without question, and if that duty was breached, then the defendant will be liable for the damages proximately caused by its conduct. The issue before the Court, however, is whether the plaintiff has stated a second cause of action, separate and apart from this negligence claim, arising out of the defendant's alleged refusal to pay for the plaintiff's medical testing and treatment in the days following the discovery of the misfilled prescription. The Court concludes that a separate cause of action for such conduct does not exist

8

in this case. The plaintiff has not cited any authority, and the Court is not aware of any, which obligates a tortfeasor to pay for medical testing or treatment before the tortfeasor's liability has been established. Furthermore, the Court finds that the plaintiff has not shown that the defendant's refusal to pay for the plaintiff's medical treatment constitutes outrageous conduct.

For the reasons set forth above, and based upon the entire record in this case, the defendant's Motion for Summary Judgment [Doc. 33] is **GRANTED**. Accordingly, (1) the plaintiff's claim that the defendant had a duty to pay for medical care for the plaintiff; (2) the plaintiff's claim for punitive damages based on the defendant's failure to pay for the plaintiff's medical care; and (3) the plaintiff's claim for outrageous conduct based on either the defendant's failure to pay for the plaintiff's medical care or the negligent misfilling of the prescription are hereby **DISMISSED**. The matter shall proceed to trial on the following issues, as set forth in the parties' Pretrial Order:

> (1) Whether the defendant Walgreen Co. negligently misfilled a prescription with Adderall and caused damage to the plaintiff;
>
> (2) Whether the plaintiff is liable for comparative fault due to ingesting medication that did not match the description of the medication in the bottle and was different from his six prior fillings of this medication; and
>
> (3) Whether the plaintiff suffered any injury, if he ingested Adderall, and if so, what is the nature and extent of the plaintiff's injury.

**ORDER TO FOLLOW.**

                                      **ENTER:**

                                                s/ H. Bruce Guyton
                                    United States Magistrate Judge